**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Kentrayle Adams,

        Plaintiff,

        v.

Board of Trustees of the University of Illinois, University of Illinois at Chicago, University of Illinois at Chicago Health, and Lakisha Stampley,

        Defendants.

No. 1:25-CV-02169

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Kentrayle Adams is a Program Services Specialist at the University of Illinois Hospital. R. 1, Compl. ¶¶ 11, 12-2.[1] He brings this employment discrimination suit against the University of Illinois at Chicago (commonly known as UIC), and Lakisha Stampley. Compl. ¶¶ 25–56.[2] UIC and Stampley move to dismiss certain state law claims, arguing that Adams has failed to exhaust his administrative remedies under the Illinois Human Rights Act. R. 44, UIC's Mot.; R. 45, UIC's Br.. at 4–5; R. 48,

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over the Title VII claims in this case under 28 U.S.C. § 1331, and over the Illinois Human Rights Act claims under 28 U.S.C. § 1367(a).

Because Adams includes two paragraphs numbered 12, the Court refers to the second of the paragraphs as Paragraph 12-2.

[2]The actual named defendants are the Board of Trustees of the University of Illinois, other UIC entities, and Stampley. But the lead defendant was inadvertently entered in CM/ECF as the Board of Trustees of University of Chicago. The Clerk's Office is directed to change the Case Short Title to "Adams v. Board of Trustees of the University of Illinois et al."

Stampley's Mot. at 2–3. UIC also argues that Adams has failed to allege an adverse employment action for his Title VII retaliation claim. UIC's Br. at 5–6. For the reasons explained below, UIC's motion is granted in part, and Stampley's motion is granted in full. The remaining claims are for Title VII sexual harassment, hostile work environment, and retaliation against UIC. Compl. ¶¶ 25–34.

## I. Background

In deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Kentrayle Adams began working for UIC as a Mental Health Counselor I in 2017. Compl. ¶ 12-2. In 2022, Adams took on the role of Behavioral Interventionist. *Id.* Adams currently works as a Program Services Specialist for UIC. *Id.* In his role as a Program Services Specialist, Adams is responsible for supervising and overseeing the Adult Psych Unit and the Adolescent Psych Unit. *Id.* ¶ 22.

Adams alleges that he was sexually harassed from 2022 to 2023 by Lakisha Stampley, who was employed by UIC as a Staff Nurse II during that two-year period. Compl. ¶¶ 12, 14. Stampley supervised Adams occasionally when they worked the same shift. *Id.* ¶ 12. Adams asserts that, in January 2023, Stampley asked Adams to engage in an extramarital affair. *Id.* ¶ 15. After Adams rejected that proposition, Stampley allegedly continued to make romantic overtures toward him. *Id.* Adams says that, even after he told Stampley that he did not have any romantic feelings for

her, she continued to text him, asking him if he was going to ignore her feelings. *Id.* In February 2023, Stampley sent him text messages that she was thinking of him and that had a winking emoji blowing a heart-shaped kiss. *Id.* After Adams told Stampley that it was best for him not to be involved emotionally with her, she asked him not to share or discuss her romantic feelings for him. *Id.* Adams alleges that Stampley made at least three complaints about his ethical behavior and work performance to sabotage his efforts to be promoted after he rejected her advances. *Id.*

On April 25, 2023, Adams filed a formal complaint about Stampley's actions with UIC's Office of Access and Equity. Compl. ¶ 18.[3] The Office of Access and Equity interviewed Adams about his claims the next day. *Id.* ¶ 19. Adams alleges that Shawn Levesque, an investigator in the Office of Access and Equity, promised that he would investigate Adams's complaint. *Id.* After Adams's interview, Stampley continued to text Adams about her feelings for him through the summer. *Id.* ¶ 20. According to Adams, UIC took no action to investigate his claims of sexual harassment through August 30, because the Office of Access and Equity believed that the situation would "blow over." *Id.* ¶ 21.

On September 25, 2023, Adams was told by Nic Krasucki, the Director of Human Resources, that he was restricted to working in the Adult Psych Unit and banned from entering the Adolescent Psych Unit until further notice. Compl. ¶ 22. On the

---

[3]Adams filed a second formal complaint with UIC about Stampley's alleged sexual harassment with UIC in January 2025. Compl. ¶ 17. He asserts that UIC has failed to take any action on this new complaint. *Id.* ¶ 24.

same day, Krasucki told Adams that Stampley had initiated a complaint against Adams and that he would be investigated. *Id.* ¶ 23. Adams alleges that Krasucki's statements were false—Stampley in fact never filed a complaint against him, and UIC's Office of Access and Equity never initiated an investigation into Adams's conduct. *Id.*

Adams filed a charge of discrimination against UIC with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (often referred to as the IDHR) on October 6, 2023. Compl. Exh. A at 12. In response, the EEOC issued a Notice of Right to Sue letter on December 3, 2024. Compl. Exh. B at 14. The letter informed Adams that the EEOC would not proceed further with its investigation, and that Adams was now free to pursue the claims against UIC by filing a lawsuit in federal or state court. *Id.* The letter warned Adams (in bold typeface) that if he wanted to file a lawsuit against UIC on this charge under federal law in federal or state court, then the "lawsuit must be filed WITHIN 90 DAYS of" his receipt of the notice. *Id.* (capitalization in original).

Adams filed this suit on February 28, 2025, which was 87 days after he received the Notice of Right to Sue. *See* Compl. The Complaint advances claims under Title VII and the Illinois Human Rights Act against UIC and Stampley. *Id.* ¶ 25-2–56.[4] Adams asserts only state law claims against Stampley. *Id.* ¶¶ 46–56. UIC and Stampley now move to dismiss the Illinois Human Rights Act claims, arguing that

---

[4]Because Adams includes two paragraphs numbered 25, the Court refers to the second of the paragraphs as Paragraph 25-2.

Adams failed to exhaust administrative remedies. UIC's Br. at 4–5; Stampley's Mot. at 2–3. UIC also argues that the only proper named defendant is the Board of Trustee of the University of Illinois, not any other UIC entities. UIC's Br. at 3–4. Finally, UIC moves to dismiss the Title VII retaliation claim, arguing that Adams has not adequately alleged that he suffered an adverse employment action. UIC's Br. at 5–6.

## II. Legal Standard

### A. Civil Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement "must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up).[5] At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task …." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively

---

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

A Rule 12(b)(6) motion "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police Chi. Lodge, No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678–79 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## B. Exhaustion

UIC and Stampley argue that the claims under the Illinois Human Rights Act should be dismissed because Adams failed to exhaust the administrative process. *See* UIC's Br. at 4–5; Stampley's Mot. at 2–3. "[E]xhaustion of administrative remedies is an affirmative defense that is generally not resolved on a motion to dismiss because a plaintiff has no obligation to allege facts negating an affirmative defense in her complaint." *Dumka v. Johnson*, 2015 WL 9268369, at *2 (N.D. Ill. Dec. 19, 2015) (cleaned up). But an exception to the rule applies where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense …." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (cleaned up). "[A] district court may dismiss a complaint if the existence of a valid affirmative

6

defense, such as the failure to exhaust, is so plain from the face of the complaint that the suit can be regarded as frivolous ….” *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010).

That exception applies here: the exhaustion defense is properly teed up at this stage because the current record is already sufficient to decide whether Adams failed to exhaust. Adams has filed the EEOC right-to-sue letter, which he received on December 3, 2024, and which triggered the 30-day deadline for him to submit a copy of the EEOC’s determination to the IDHR. 775 ILCS 5/7A-102(A-1)(1)(iv). *See* Compl. Exh. B. And in his responses to the motions to dismiss, Adams admits that he did not file a written request with the IDHR to review the EEOC’s determination within 35 days, and that the IDHR has not yet notified him of whether it adopted the EEOC’s determination or that he has a right to sue. R. 53, Pl.’s Resp. to Stampley’s Mot. at 1–2; R. 54, Pl.’s Resp. to UIC’s Mot. at 2–4. Because “all relevant facts are presented” at this stage to decide whether Adams failed to exhaust, the Court may decide the exhaustion argument at this stage. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). In reality, these dismissal motions are being treated as motions for judgment on the pleadings under Civil Rule 12(c). *Id.*; *Brooks*, 578 F.3d at 579.

### III. Analysis

### A. Redundancy

As an initial matter, UIC argues that the claims against the University of Illinois at Chicago and the University of Illinois at Chicago Health should be dismissed as redundant because under the University of Illinois Act, the University's Board of Trustees is the correct body to be sued. UIC's Br. at 3–4; *see* 110 ILCS 305/1. Adams agrees. Pl.'s Resp. to UIC's Mot. at 1. So the University of Illinois at Chicago and University of Illinois at Chicago Health are dismissed with prejudice as named defendants.

### B. Exhaustion

Before bringing a suit under the Illinois Human Rights Act, "plaintiffs must file a charge of discrimination with the [IDHR]." *Donald v. City of Chicago*, 539 F. Supp. 3d 912, 920 (N.D. Ill. 2021). "[T]he complainant may file a civil suit after (1) she receives a final report from the IDHR, or (2) the IDHR fails to issue a report within a year after the charge is filed." *Baranowska v. Intertek Testing Servs., NA, Inc.*, 2020 WL 1701860, at *3 (N.D. Ill. Apr. 8, 2020) (citing 775 ILCS 5/7A-102(D), (G)). When a plaintiff files a charge with the EEOC in Illinois, the charge is automatically cross-filed with the IDHR. *See* 775 ILCS 5/7A-102(A-1)(1). The IDHR will "take no action until the EEOC makes a determination on the charge and after the complainant notifies the [IDHR] of the EEOC's determination." *Id.* As pertinent to this case, there is another crucial step required *after* the EEOC has made its decision: the

Illinois Human Rights Act requires the complainant to "submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complainant." 775 ILCS 5/7A-102(A-1)(1)(iv). The IDHR will then either accept the EEOC's determination or begin an independent investigation. 775 ILCS 5/7A-102(A-1)(3).

UIC and Stampley argue that Adams failed to exhaust the administrative process because he did not comply with the 30-day deadline to notify the IDHR of the EEOC's determination. UIC's Br. at 4–5; Stampley's Mot. at 2–3; R. 56, UIC's Reply at 1–4; R. 57, Stampley's Reply at 3–6. In response, Adams relies primarily on *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395 (7th Cir. 2019). Pl.'s Resp. to UIC's Mot. at 2–3; Pl.'s Resp. to Stampley's Mot. at 1–2. But *Trujillo* does not help Adams. In *Trujillo*, the employee filed an EEOC charge, but made a mistake in the formal name of the employer. 926 F.3d at 400. The plaintiff had provided the correct address and telephone number for his place of employment on the form, but he missed one word that was in the official business name that the employer had filed with the Illinois Secretary of State. *Id.* at 397, 400. The Seventh Circuit held that this mistake "present[ed] not a failure to name a party at all … but a minor error in stating the name of the employer." *Id.* at 400.

That is not at all what happened here. The Illinois Human Rights Act requires that the complainant send the state agency the EEOC's determination within 30 days of the determination's issuance. 775 ILCS 5/7A-102(A-1)(1)(iv). The Act itself reveals

the purpose of this notice requirement: the IDHR will then either accept the determination or begin an independent investigation. 775 ILCS 5/7A-102(A-1)(3). Not surprisingly, courts in this District have dismissed claims under the Act when employee-plaintiffs failed to follow the notice requirement. *See Hickman v. Bd. of Educ. of Hinsdale Twp.*, 2023 WL 9050972, at \*3 (N.D. Ill. Dec. 29, 2023) ("The failure to timely forward the EEOC's determination to the IDHR results in a failure to exhaust the administrative process that ultimately dooms the complainant's subsequent lawsuit." (cleaned up)); *see also Surgit v. City of Chicago*, 2023 WL 2746000, at \*4 (N.D. Ill. Mar. 31, 2023) (concluding that the plaintiff "failed to exhaust her administrative remedies with regard to her IHRA claim" because she failed to notify the IDHR of the EEOC's determination within 30 days of receiving it); *Jafri v. Signal Funding LLC*, 2019 WL 4824883, at \*2 (N.D. Ill. Oct. 1, 2019) (same).

In a blame-the-bureaucracy approach, Adams argues that he should not be penalized for the IDHR's purported "failure" (to use Adams's label) to comply with the Act when the IDHR did not itself issue a Right to Sue letter. Pl.'s Resp. to Stampley's Mot. at 1–2; Pl.'s Resp. to UIC's Mot. at 3. It is true that the IDHR has a presumptive duty to issue a Right to Sue Letter after a certain amount of time passes—but not surprisingly, that duty arises only *after* the complainant has informed the IDHR about the EEOC determination, the very thing that the IDHR is supposed to be notified about:

> If the complainant does not file a written request with the Department to review *the EEOC's determination* within 35 days after receipt of the Department's notice, the Department shall notify the complainant, within 10 business

10

days after the expiration of the 35-day period, that the decision of the EEOC has been adopted by the Department ... and that the complainant has the right, within 90 days after receipt of the Department's notice, to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction.

775 ILCS 5/7A-102(A-1)(3)(a) (emphasis added). Adams argues that because he did not file a written request with the IDHR to review the EEOC's determination within 35 days of *his* receipt of the EEOC determination, then the IDHR should have sent a Right to Sue letter. Pl.'s Resp. to Stampley's Mot. at 1–2; Pl's Resp. to UIC's Mot. at 3. But the Act does not excuse Adams from *his* obligation to inform the IDHR of the EEOC's determination. Indeed, the same statutory provision that Adams relies on explicitly reiterates that the complainant must notify the IDHR of the EEOC determination:

> For ... charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC ... does not issue a determination, but does issue the complainant a notice of a right to sue ... and if the Department is timely notified of the EEOC's determination *by the complainant*, the Department shall notify the parties ... that the Department will adopt the EEOC's determination ....

775 ILCS 5/7A-102(A-1)(3) (emphasis added). The statutory provision that Adams cites simply provides the default rule on what will happen if a complainant does not file a written request for the IDHR to *review* the EEOC's determination—but, again, that presupposes that the complainant has notified the IDHR of what the EEOC determined.

11

So nothing in the Act helps Adams. Nor do the cases cited by Adams in his response briefs. *Cobb v. Stringer,* 850 F.2d 356, 358 (8th Cir. 1988), examined whether the plaintiff's amended *EEOC* charge of discrimination was timely and did not discuss the specific requirements of the Illinois Human Rights Act. The two other cited cases likewise do not discuss the Act. *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124 (7th Cir. 1989); *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534 (7th Cir. 1988).

On the current pleadings, then, the claims under the Illinois Human Rights Act must be dismissed as unexhausted. Adams says that he has since notified the IDHR about the charges of discrimination. Pl.'s Resp. to Stampley's Mot. at 2; Pl.'s Resp. to UIC's Mot. at 3. If he has properly exhausted the claims, then he may move to file an amended complaint.[6]

### C. Title VII Retaliation

Next, Adams alleges that UIC retaliated against him for complaining about harassment by restricting him to working in the Adult Psych Unit and banning him from entering the Adolescent Psych Unit until further notice. Compl. ¶ 22. UIC's view is that the retaliation claim should be dismissed because Adams was not subject to

---

[6]At this stage, it is not clear whether Adams's claims under the Act would be timely. Equitable tolling is a fact-intense inquiry, more appropriate for summary judgment or an evidentiary hearing than a motion to dismiss. *See Socha v. Boughton,* 763 F.3d 674, 684 (7th Cir. 2014) ("The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." (cleaned up)). Adams does not offer any reason why he did not send a copy of the EEOC's determination to the IDHR within 30 days of receiving it, but if he offers any additional facts in an amended complaint, the Court will consider any equitable tolling arguments at the appropriate time.

an adverse employment action. UIC's Br. at 5–6; UIC's Reply at 4–6. Adams responds

by arguing that *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2023), held that a

plaintiff does not need to show that the harm they suffered was material, significant,

serious, or substantial to establish an adverse employment action for a Title VII

claim. Pl.'s Resp. to UIC's Mot. at 1–2. Adams has the better of the argument.

Title VII forbids employment discrimination on the basis of sex and also bans

retaliation for opposing sex discrimination (including reporting that it happened). It

is "an unlawful employment practice for an employer to discriminate against any of

[its] employees … [or] to discriminate against any individual … because [they have]

opposed any practice made an unlawful employment practice by this subchapter …."

42 U.S.C. § 2000e–3(a). The retaliation provision in Title VII does not list specific

types of employer action that can qualify as retaliatory and should "be construed to

cover a broad range of employer conduct." *Thompson v. N. Am. Stainless, LP*, 562

U.S. 170, 173 (2011). "To plead a retaliation claim under Title VII, a plaintiff must

allege that [he] engaged in statutorily protected activity and was subjected to an ad-

verse employment action as a result of that activity …." *Luevano v. Wal-Mart Stores,*

*Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). "The protected activity must be specifically

identified." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). The filing

of an official complaint with an employer may constitute statutorily protected activ-

ity, as long as the complaint suggests that the discrimination happened because of

sex, race, national origin, or some other protected class. *Tomanovich v. City of*

*Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Taking the allegations as true, there is little doubt that Adams sufficiently pleaded that he engaged in protected activity when he filed a complaint with UIC's Office of Access and Equity about Stampley's alleged sexual harassment on April 25, 2023. Compl. ¶ 18. The real issue is whether the work restriction imposed on Adams by UIC qualifies as an adverse employment action.

The test for whether employer action qualifies as retaliatory is whether "a reasonable employee would have found the challenged action materially adverse …." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). What this means is that the action could have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007). "Petty slights, minor annoyances, and simple lack of good manners are normally not sufficient to deter a reasonable person." *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 729 (7th Cir. 2009) (cleaned up). It is worth noting that the test for an adverse employment action in the *retaliation* context is thus different from that which applies in the *discrimination* context. In *Muldrow*, the Supreme Court held that in *discrimination* cases, the harm incurred by the plaintiff does not need to be "serious, substantial, or any similar adjective suggesting that the disadvantage must exceed a heightened bar." *Muldrow*, 601 U.S. at 355. The Supreme Court issued a reminder in distinguishing the standard for retaliation versus discrimination, instructing that the test adopted in *Burlington* was aimed at capturing

14

employer actions "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 357 (cleaned up). The *Burlington* standard is the correct one to apply to the retaliation claim.

At this pleading stage, Adams has alleged enough to survive a motion to dismiss on the retaliation claim. Adams says that he was restricted to working in the Adult Psych Unit and was not allowed to enter the Adolescent Psych Unit indefinitely—even though his job required him to supervise both units. Compl. ¶ 22. It is reasonable to infer that this restriction led to a decrease in supervisory authority, which could deter a reasonable worker from making or supporting a charge of discrimination. *See, e.g.*, *Ozuruigbo v. City of Evanston*, 2024 WL 4953697, at *3 (N.D. Ill. Dec. 3, 2024) (explaining that, at the pleading stage, an adverse action was sufficiently alleged because the employee was "stripped of some of her job responsibilities (including supervision)").

Even if Adams did not experience a decrease in supervisory authority, it is reasonable to infer that the restriction made it more difficult for him to perform his job duties and thus would dissuade a reasonable employee from making a charge of discrimination. *See Prasad v. Acxiom Corp.*, 2013 WL 2636050, at *6 (N.D. Ill. June 12, 2013) (holding that taking certain sales accounts away from the plaintiff affected her ability to perform her job and could have dissuaded a reasonable employee from opposing discrimination). Here, it is reasonable to infer that the restriction on Adams's

ability to enter one of the two units under his supervision affected his abilities to perform his job duties.

Finally, Adams has adequately alleged that there is a causal connection between his complaint to the Office of Access and Equity in April 2023 and the work restriction. Human Resources Director Krasucki purportedly told Adams about the work restriction and Stampley's (allegedly false) complaint against Adams on the same day, Compl. ¶¶ 22–23, which is enough to demonstrate a causal link between Adams's complaint about Stampley's alleged harassment and the work restriction. In sum, Adams has adequately pleaded a retaliation claim.

### D. Failure to Name Stampley in EEOC Charge

Lastly, Stampley argues that Adams did not exhaust administrative remedies as to her specifically because Adams did not name Stampley on the EEOC charge that was filed on October 6, 2023. Stampley's Mot. at 2–3; Stampley's Reply at 3–7. It is true that, typically, a party not named in an EEOC charge may not be sued under Title VII. *Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981). The purpose for the rule is twofold: "First, it serves to notify the charged party of the alleged violation. Second, it gives the EEOC an opportunity for conciliation …." *Schnellbaecher*, 887 F.2d at 126. When "a party has a close relationship with a named respondent … and has actual notice of the EEOC charge," the party had a sufficient opportunity to conciliate. *Eggleston*, 657 F.2d at 907. But in *Eggleston*, the Seventh Circuit recognized an important exception to this rule: "where

16

an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance, the charge is sufficient to confer jurisdiction over that party." *Id.* at 905; *see also Davis v. Weidner*, 596 F.2d 726, 729 (7th Cir. 1979) (refusing to penalize a layperson for failing to heed precise EEOC filing requirements prior to filing lawsuit). *Eggleston* explained that "[t]he purpose behind this exception is to prevent frustration of the goals of Title VII by not requiring procedural exactness in stating the charges." 657 F.2d at 905. The Seventh Circuit later clarified that for the *Eggleston* exception to apply, the unnamed party must not only have notice of the charge against the named party, but notice of the charge against itself. *Schnellbaecher*, 887 F.2d at 127. In other words, it is not enough for Stampley to be on notice of the charge that was filed against UIC; she must have had notice of an allegation against *her*.

Here, Adams alleges in the Complaint that he filed a formal complaint against Stampley's alleged sexual harassment with UIC's Office of Access and Equity in April 2023. Compl. ¶ 18. At the pleading stage, this is enough for the Court to infer that Stampley was on notice of the charge. Stampley occasionally supervised Adams, and the complaint specifically complaint about her conduct. So, giving Adams the benefit of reasonable inferences, Stampley would have been given notice of Adams's internal complaint. And "[w]hile a mere corporate relationship between a named respondent and an unnamed party is said to be insufficient to establish notice," suit has been

17

allowed where "the unnamed party is in a position to know of the charge and that its own conduct is likely to come under investigation as a result of the charge …." *Carothers v. Off. of the Transitional Adm'r*, 2013 WL 3388876 (N.D. Ill. July 8, 2013). Finally, Stampley does not deny that she knew of the charges. *See generally* Stampley's Mot; Stampley's Reply. "[G]iven the Act's remedial purposes, charges are to be construed with utmost liberality and parties sufficiently named or alluded to in the factual statement are to be joined." *Eggleston*, 657 F.2d at 906 (cleaned up).

So, yes, the claims under the Illinois Human Rights Act—including those against Stampley—are dismissed for lack of exhaustion, as explained above. But if Adams successfully exhausts the claims with the IDHR, then it is worth knowing now that the claims against Stampley would be intact notwithstanding Adams's failure to put her name in the original EEOC charge.

## IV. Conclusion

UIC's and Stampley's motions to dismiss, R. 44; R. 48, are granted as to the claims under the Illinois Human Rights Act. UIC's motion to dismiss is denied as to the Title VII retaliation claim.

Adams may file an amended complaint to resuscitate the unexhausted claims by April 13, 2026, if he so chooses. If no amended complaint is filed by the deadline, then those claims will remain dismissed, and Stampley will be dismissed from the

18

case as a named party (because only state law claims are brought against her). In any event, it is time to get discovery going, so the parties shall confer and file a proposed discovery schedule (using the template in R. 19-1), by April 6, 2026.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2026