**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KENTRAYLE ADAMS,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and LAKISHA STAMPLEY,<br><br>Defendants. | NO. 1:25-CV-02169<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Kentrayle Adams brings this employment discrimination suit against the University of Illinois at Chicago (commonly known as UIC), and Lakisha Stampley, for alleged sexual harassment.[1] R. 67, Am. Compl. UIC and Stampley move to dismiss certain state law claims, arguing that Adams has failed to exhaust his administrative remedies under the Illinois Human Rights Act and to adequately state a claim for intentional infliction of emotional distress. R. 73, UIC's Mot.; R. 74, UIC's Br. at 4–6; R. 77, Stampley's Mot. at 3–8. UIC also moves to dismiss the emotional-distress claim under Civil Rule 12(b)(1), and the negligent supervision-and-retention claim under Rule 12(b)(6). UIC's Br. at 6–11. For the reasons explained below, UIC's motion is granted in full, and Stampley's motion is granted in part. The remaining claims are

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over the Title VII claims in this case under 28 U.S.C. § 1331, and over the state-law claims under 28 U.S.C. § 1376(a).

for Title VII sexual harassment, hostile work environment, and retaliation against UIC, Am. Compl. ¶¶ 28–37, and for intentional infliction of emotional distress against Stampley, *id.* ¶¶ 56–59.

## I. Background

In deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Kentrayle Adams began working for UIC in 2017 as a Mental Health Counselor I. Am. Compl. ¶ 16. In 2022, Adams became a Behavioral Interventionist. *Id.* He later became a Program Services Specialist. *Id.* Adams alleges that Stampley made repeated unwelcome sexual advances toward him from 2022 through 2023, which included proposing an extramarital affair and the sending of messages expressing romantic feelings with emojis blowing heart-shaped kisses. *Id.* ¶¶ 17–18. After Adams rejected Stampley's advances, Stampley allegedly made false complaints about Adams' ethics and work performance in an effort to sabotage his promotional opportunities. *Id.* ¶ 20. Adams reported Stampley's conduct to UIC on April 25, 2023, and to the university's Office of Access and Equity the next day. *Id.* ¶ 21. But UIC allegedly took no action for more than four months, and during that time, Stampley allegedly continued to express her romantic feelings to Adams. *Id.* ¶ 22–23.

Adams alleges that in September 2023, the Director of Human Resources falsely told Adams that Stampley had filed a complaint against him, when in reality she had not done so. Am. Compl. ¶¶ 24–25. The Human Resources Director also told

Adams that he was barred from working in the Adolescent Psych Unit. *Id.* ¶ 24. In January 2025, Adams filed another complaint against Stampley, and UIC again allegedly took no action. *Id.* ¶ 26.

Backing up, in October 2023, Adams filed a charge of discrimination with the Equal Employment Opportunity Commission (commonly known as the EEOC). Am. Compl. ¶ 8. He eventually brought this suit against UIC and Stampley under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq*. *See* R. 1, Compl. UIC and Stampley moved to dismiss the Human Rights Act claims for failure to exhaust, and UIC also moved to dismiss the Title VII retaliation claim for failure to state a claim. R. 44, UIC's First Mot.; R. 45, UIC's First Br. at 5–6; R. 48, Stampley's First Mot. UIC's motion to dismiss was granted in part and Stampley's motion to dismiss was granted in full.[2] R. 62, Mem. Op. and Order. The Court permitted Adams to file an amended complaint to resuscitate the unexhausted claims, *id.* at 18, while noting that exhaustion is (at most) evaluated as a Civil Rule 12(c) motion for judgment on the pleadings if all relevant facts are presented without dispute, *id.* at 7. Adams has filed an amended complaint in which he asserts claims for Title VII sexual harassment, hostile work environment, and retaliation against UIC, Am. Compl. ¶¶ 28–37; claims under the Illinois Human Rights Act for sexual harassment, hostile work environment, and retaliation against UIC and Stampley,

[2]The Court dismissed Adams' Illinois Human Rights Act claims against UIC and Stampley for failure to exhaust, but denied UIC's motion to dismiss as to Adams' Title VII retaliation claim. *See generally* Memorandum Op. and Order.

*id.* ¶¶ 38–55; claims for intentional infliction of emotional distress against UIC and Stampley, *id.* ¶¶ 56–63; and a claim for negligent supervision and retention against UIC, *id.* ¶¶ 64–67. UIC and Stampley once again move to dismiss, arguing failure to exhaust the Illinois Human Rights Act claims and failure to adequately state the state tort claims. UIC's Br. at 4–6; Stampley's Mot. at 3–8.

## II. Legal Standard

### A. Civil Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

A Rule 12(b)(6) motion "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**B. Exhaustion**

On exhaustion of the claims under the Illinois Human Rights Act, "exhaustion of administrative remedies is an affirmative defense that is generally not resolved on a motion to dismiss because a plaintiff has no obligation to allege facts negating an affirmative defense in her complaint." *Dumka v. Johnson*, 2015 WL 9268369, at *2 (N.D. Ill. Dec. 19, 2015) (cleaned up). But an exception to the rule applies where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (cleaned up). "[A] district court may dismiss a complaint if the existence of a valid affirmative defense, such as the failure to exhaust, is so plain from the face of the complaint that the suit can be regarded as frivolous." *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010).

As it was in the first-round dismissal motion, that exception applies here: the exhaustion defense is again properly teed up at this stage because the current record is sufficient to decide whether Adams failed to exhaust. Adams has filed the EEOC Right to Sue letter, which he received on December 3, 2024, *see* R. 1, Compl. Exh. B at 14, and which triggered the 30-day deadline for him to submit a copy of the EEOC's determination to the Illinois Department of Human Rights (IDHR), 775 ILCS 5/7A-102(A-1)(1)(iv).[4] And in Adams' response to UIC's motion to dismiss, Adams admits that he did not file a written request with the IDHR to review the EEOC's determination within before the statutory deadline. Pl.'s Resp. to UIC's Mot. at 6–7. Because "all relevant facts are presented" (and are not disputed) to decide whether Adams failed to exhaust, the Court may decide the exhaustion argument at this stage. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). To repeat, these dismissal motions are being treated as motions for judgment on the pleadings under Civil Rule 12(c). *Id.*; *Brooks*, 578 F.3d at 579.

### III. Analysis

### A. Tort Claims Against UIC

UIC argues that Adams' claims for (a) intentional infliction of emotional distress and (b) negligent supervision and retention should be dismissed under Civil

---

[4]The parties did not file the Notice of Right to Sue letter issued by the EEOC in this round of briefing. Adams filed the letter with his original complaint, *see* R. 1, Compl. Exh. B at 14, which UIC refers to in its motion, UIC's Br. at 4. The issue is not contested by the parties, so the Court considers the Notice of Right to Sue letter for this Opinion and Order. But the amended complaint otherwise supersedes the original complaint. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998).

Rule 12(b)(1) because: (1) UIC is a branch of the State of Illinois and thus the Eleventh Amendment bars the claim for monetary damages; (2) the tort claims are time-barred; and (3) the tort claims are preempted by the Illinois Human Rights Act. UIC's Br. at 6–8. In the alternative, under Civil Rule 12(b)(6), UIC also argues that Adams fails to adequately state a claim for intentional infliction of emotional distress because he has not alleged any facts suggesting that the misconduct was extreme and outrageous, or that UIC acted with the intention to inflict severe emotional distress (or knew that there was a high probability of causing that distress). *Id.* at 8–10. On the claim for negligent supervision and retention, UIC argues that the alleged facts do not plausibly suggest that Stampley was particularly unfit for her position when she was hired or retained, or that her employment was the "proximate cause" of his alleged injuries. *Id.* at 10–11.

In response, Adams voluntarily dismisses the claims for intentional infliction of emotional distress and negligent supervision and retention against UIC because he concedes that the university enjoys Eleventh Amendment immunity from monetary damages for those claims. Pl.'s Resp. to UIC's Mot. at 2. So the Court dismisses Counts 11 and 12 against UIC.

**B. Exhaustion**

Before bringing a suit under the Illinois Human Rights Act, "plaintiffs must file a charge of discrimination with the [IDHR]." *Donald v. City of Chicago*, 539 F. Supp. 3d 912, 920 (N.D. Ill. 2021). "[T]he complainant may file a civil suit after (1) she receives a final report from the IDHR, or (2) the IDHR fails to issue a report

within a year after the charge is filed." *Baranowska v. Intertek Testing Servs. NA, Inc.*, 2020 WL 1701860, at *3 (N.D. Ill. Apr. 8, 2020) (citing 775 ILCS 5/7A-102(D), (G)). When a plaintiff files a charge with the EEOC in Illinois, the charge is automatically cross-filed with the IDHR. *See* 775 ILCS 5/7A-102(A-1)(1). The IDHR will "take no action until the EEOC makes a determination on the charge" and after it is notified of the IDHR's determination. *Id.* As pertinent to this case, the Illinois Human Rights Act requires the complainant to "submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complainant." 775 ILCS 5/7A-102(A-1)(1)(iv). The IDHR will then either accept the EEOC's determination and issue a Right to Sue letter, 775 ILCS 5/7A-102(A-1)(2),(3)(a), or review the EEOC's determination to decide whether it needs to conduct further investigation, 775 ILCS 5/7A-102(A-1)(3)(b).

UIC and Stampley argue that Adams failed to exhaust the administrative process because he did not comply with the 30-day deadline to notify the IDHR of the EEOC's determination. UIC's Br. at 4–6; Stampley's Mot. at 3–6. In response, Adams argues that he exhausted administrative remedies—despite failing to comply with the 30-day deadline—because the *IDHR* failed to provide a supposedly required notice to *Adams*. Pl.'s Resp. to UIC's Mot. at 4–7; R. 82, Pl.'s Resp. to Stampley's Mot. at 4–9.

But Adams has the notification requirement backwards. The Illinois Human Rights Act requires that the *complainant* send the state agency the EEOC's determination within 30 days of the determination's issuance. 775 ILCS 5/7A-102(A-1)(1)(iv).

The Act itself reveals the purpose of this notice requirement: the IDHR will then either accept the determination or begin an independent investigation. 775 ILCS 5/7A-102(A-1)(3). Courts in this District have dismissed claims under the Act when employee-plaintiffs failed to follow the notice requirement. *See Hickman v. Bd. of Educ. of Hinsdale Twp.*, 2023 WL 9050972, at *3 (N.D. Ill. Dec. 29, 2023) ("The failure to timely forward the EEOC's determination to the IDHR results in a failure to exhaust the administrative process that ultimately dooms the complainant's subsequent lawsuit." (cleaned up)); *see also Surgit v. City of Chicago*, 2023 WL 2746000, at *4 (N.D. Ill. Mar. 31, 2023) (concluding that the plaintiff "failed to exhaust her administrative remedies with regard to her [Illinois Human Rights Act] claim" because she failed to notify the IDHR of the EEOC's determination within 30 days of receiving it); *Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019) (same).

As he did the first time around, Adams argues that the IDHR has a duty to issue a Right to Sue letter after a certain amount of time passes, and that its failure to do so means that he should not be held responsible. Pl.'s Resp. to UIC's Mot. at 6; Pl.'s Resp. to Stampley's Mot. at 7. The Court repeats here what was explained in the opinion on the prior dismissal motion. Mem. Op. at 10–11. It is true that the IDHR has a presumptive duty to issue a Right to Sue Letter after a certain amount of time passes—but not surprisingly, that duty arises only *after* the complainant has informed the IDHR about the EEOC determination, the very thing that the IDHR is supposed to be notified about:

> If the complainant does not file a written request with the Department to review *the EEOC's determination* within 35 days after receipt of the Department's notice, the Department shall notify the complainant, within 10 business days after the expiration of the 35-day period, that the decision of the EEOC has been adopted by the Department … and that the complainant has the right, within 90 days after receipt of the Department's notice, to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction.

775 ILCS 5/7A-102(A-1)(3)(a) (emphasis added). So the Act does not excuse Adams from *his* obligation to inform the IDHR of the EEOC's determination. Indeed, the same statutory provision that Adams relies on explicitly reiterates that the complainant must notify the IDHR of the EEOC determination:

> For … charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC … does not issue a determination, but does issue the complainant a notice of a right to sue … and if the Department is timely notified of the EEOC's determination *by the complainant*, the Department shall notify the parties … that the Department will adopt the EEOC's determination ….

775 ILCS 5/7A-102(A-1)(3) (emphasis added). The statutory provision that Adams cites simply provides the default rule on what will happen if a complainant does not file a written request for the IDHR to *review* the EEOC's determination—but, again, that presupposes that the complainant has notified the IDHR of what the EEOC determined.

The cases cited by Adams in his response briefs do not aid his argument. Unfortunately, two of the cases have the hallmarks of being provided by generative AI. First, Adams cites *Thakkar v. Wilson Enters., Inc.*, 458 N.E.2d 985 (Ill. App. Ct. 1983) for the following quotation: "The IHRA is a remedial statute and must be liberally

construed to protect claimants' rights." Pl.'s Resp. to UIC's Mot. at 6; Pl.'s Resp. to Stampley's Mot. at 7. But that particular quotation does not appear in the case, and the citation itself is incorrect and does not include even a page citation.[5] Adams then cites *Board of Education of Roxana Community School District No. 1 v. Pollution Control Board*, 998 N.E.2d 1256 (Ill. 2013), for the proposition that "a party cannot be deprived of a statutory right because an agency failed to perform a mandatory ministerial act." Pl.'s Resp. to UIC's Mot. at 6; Pl.'s Resp. to Stampley's Mot. at 7. But in *Roxana Community School District*, the Illinois Supreme Court decided whether a local board of education was authorized to appeal the decision of a state pollution-control board. 998 N.E.2d at 1258. The answer was no. *Id.* at 1263. But there is no discussion in the case, as far as the Court can discern, of a deprivation of a statutory right "because an agency failed to perform a mandatory ministerial act." Pl.'s Resp. to UIC's Mot. at 6. The decision simply does not involve the issue at all.

In addition to those two cases, Adams cites *People ex rel. Madigan v. Illinois Commerce Commission*, 899 N.E.2d 227 (Ill. 2008), for the proposition that "when a statute imposes a duty on an *agency*, the *agency's failure* to act cannot prejudice the rights of a party who has complied with their own obligations."[6] Pl.'s Resp. to UIC's

[5]In the text, the citation to the Northeastern Reporter is what the Court was able to find for an Illinois Appellate Court decision named *Thakkar v. Wilson* from 1983. Adams actually provided the citation 2020 IL App (1st) 191178 for *Thakkar v. Wilson*, Pl.'s Resp. to UIC's Mot. at 6; Pl.'s Resp. to Stampley's Mot. at 7, but the Court could not locate a case with that citation.

[6]In Adams' response brief, the phrase "emphasis added" in italics was included in parentheses after the asserted proposition. Pl.'s Resp. to UIC's Mot. at 6; Pl.'s Resp. to

Mot. at 6 (emphasis in original); Pl.'s Resp. to Stampley's Mot. at 7 (emphasis in original). But there the Illinois Supreme Court only held that a document that is electronically filed with the Illinois Commerce Commission is deemed to be filed on the date of e-filing so long as it is posted by midnight (rather than at a 5 p.m. business-hour cutoff). *Madigan*, 899 N.E.2d at 235–36. That holding does not authorize a person to skip his own obligation before the agency's obligation is triggered. Finally, Adams cites *Castaneda v. Illinois Human Rights Commission*, 547 N.E.2d 437 (Ill. 1989), for the proposition that "exhaustion of the administrative remedies or procedure is satisfied when the complainant has done what the statute requires, all remaining steps are the agency's responsibility." Pl.'s Resp. to UIC's Mot. at 6; Pl.'s Resp. to Stampley's Mot. at 7. That is not a particularly controversial notion, but even that proposition was not addressed by *Castaneda*. There, the Illinois Supreme Court decided only that those who lost in front of a three-member Human Rights Commission panel were required to seek review of the loss in front of the entire *en banc* Commission. *Castaneda*, 547 N.E.2d at 446–49. Nothing in *Castaneda* supports Adams' position.

Adams also argues that the IDHR did not inform him of his obligation to alert the IDHR of the EEOC's determination. As evidence, he submits a letter from the IDHR dated May 15, 2026. Pl.'s Resp. to Stampley's Mot., Exh. 1. According to Adams, the letter "indicat[es] that they never received the dual filing from the EEOC." Pl.'s

Stampley's Mot. at 7. But there are no quotation marks in the sentence, so it does not make sense that Adams added emphasis to a quotation.

Resp. to Stampley's Mot. at 6. It is not clear why Adams draws that inference from the IDHR letter. The letter refers to two EEOC charges by specific number, each time saying that the IDH received notice of the charge from the EEOC. Pl.'s Resp. to Stampley's Mot., Exh. 1 at 12 ("On your Complainant Information Sheet, you indicated that you filed charge #440-2021-06653 against UI Health with the Equal Employment Opportunity Commission (EEOC). The Illinois Department of Human Rights (IDHR) *also received notice from* the EEOC that you filed this charge …." (emphasis added)); *id.* ("The Illinois Department of Human Rights (IDHR) *received notice* from the Equal Employment Opportunity Commission (EEOC) indicating that you filed charge #440-2023-10555 against UI Health …." (emphasis added)). In any event—and more importantly—Adams cites no authority for the proposition that the IDHR must notify a complainant of the 30-day deadline in order for the law to apply. And there is nothing in the pertinent statute, 775 ILCS 5/7A-102(A-1)(1), that puts the onus on the IDHR to provide the timeline to the complainant.

In sum, given the undisputed facts, the claims under the Illinois Human Rights Act against UIC and Stampley must be dismissed as unexhausted. Because Adams has had two opportunities to submit evidence and argument against the exhaustion defense, the dismissal for lack of exhaustion is now final.

**C. Emotional Distress (Stampley)**

In the amended complaint, Adams brings a claim for intentional infliction of emotional distress against Stampley for pursuing him romantically and for allegedly making false complaints about his ethics and work performance to sabotage his

promotional opportunities. Am. Compl. ¶¶ 20, 56–59. Stampley's view is that Adams has failed to adequately state a claim because he has not alleged any specific facts suggesting that her conduct was extreme and outrageous. Stampley's Mot. at 8. Stampley also contends that the amended complaint does not include any allegations of Adams undergoing medical treatment due to the alleged misconduct. *Id.* Finally, Stampley argues that the Illinois Human Rights Act preempts any cause of action for intentional infliction of emotional distress. R. 84, Stampley's Reply Br. at 9–10.

Starting in reverse order, the Human Rights Act is the exclusive remedy for civil-rights violations under Illinois law. *See* 775 ILCS 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). Under the Act, sexual harassment by any "employer, employee, [or] agent of any employer" is a civil rights violation. 775 ILCS 5/2-102(D). The statute defines "sexual harassment" as:

> [A]ny unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

775 ILCS 5/2-101(E).

But the Act does not serve as an absolute bar to all common law claims that are factually related to sexual harassment. To determine whether a claim is preempted by the statute, Illinois courts apply the "inextricably linked" test. That is,

if a plaintiff's civil rights claim is "inextricably linked" to a civil rights violation as defined in the Act "such that there is no independent basis for imposing liability apart from the Act itself," *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22 (Ill. 1997) (cleaned up), then that claim "must be litigated before the Commission—and only before the Commission," *id.* Inextricable linkage in Illinois case law depends on whether a claim is invoking the "legal duties" created by the Act or can be instead established through an "independent" basis. *Id.* at 22–23; *see also Geise v. Phoenix Co. of Chi.*, 639 N.E.2d 1273, 1277 (Ill. 1994) (holding that on the facts of that case, the sexual harassment claim was preempted because there was "no independent basis" for the common-law claim); *Naeem v. McKesson Drug. Co.*, 444 F.3d 593, 602–03 (7th Cir. 2006) ("[I]f a plaintiff can allege facts sufficient to establish elements of a tort, that tort is not preempted."). So the question is whether a plaintiff can state a claim without—either explicitly or implicitly—having to call upon the IHRA to support it. The Seventh Circuit has "emphasized that the preemption test rests on an examination of legal duties, not on the factual overlap between the claims." *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017) (cleaned up).

To successfully state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the conduct involved was "truly extreme and outrageous"; (2) the actor either intended that "his conduct inflict severe emotional distress" or knew "that there [was] at least a high probability that his conduct w[ould] cause severe emotional distress"; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "It is clear that mere

insults, indignities, threats, annoyances, petty oppressions or other trivialities do not qualify as outrageous conduct." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992) (cleaned up). And in the employment context, Illinois courts "often hesitate to find a claim for intentional infliction of emotional distress in employment situations" based on concern that "if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. App. Ct. 2000).

Despite the high bar for emotional-distress claims, at the pleading stage Adams has alleged enough to adequately state a claim without having to rely on the Illinois Human Rights Act. Specifically, Adams alleges that Stampley made "false and unfounded complaints" about his ethics and work performance to "sabotage his promotional opportunities" after he rejected her advances. Am. Compl. ¶ 20. Making false complaints about an employee's ethics and work performance to harm their professional reputation qualifies as more than "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities," *Kolegas*, 607 N.E.2d at 211; *see Hobson v. Tishman Speyer Props., L.P.*, 2008 WL 2625905, at *5 (N.D. Ill. June 27, 2008) (holding that a reasonable jury could find the defendant's denigrating comments to be "extreme and outrageous"). Indeed, false complaints about a coworker's or supervisee's ethics and work performance are not covered by the definition of "sexual harassment" in the Human Rights Act.

The amended complaint also sufficiently alleges facts to satisfy the remaining elements of an emotional-distress claim. Courts have generally held that the second element—intention to inflict emotional distress (or at least knowledge that there was a high probability that the alleged conduct would do so)—is satisfied "either when a defendant's actions, by their very nature, were likely to cause severe distress or when the defendant knew that a plaintiff was particularly susceptible to such distress and that, because of this susceptibility, the defendant's actions were likely to cause it to occur." *Honaker v. Smith*, 256 F.3d 477, 494 (7th Cir. 2001). In this case, when viewing the allegations in Adams' favor and giving him the benefit of reasonable inferences, it is plausible to say that the false complaints caused severe distress by their very nature.

Finally, Adams alleges that Stampley's behavior caused him to suffer severe emotional distress. Am. Compl. ¶ 59. Though he does not provide additional facts to support this allegation, that is unnecessary at the pleading stage. Stampley responds that the amended complaint does not include any alleged facts about "medical attention" that Adams may have needed because of alleged misconduct, but "neither physical injury nor the need for medical treatment is a necessary prerequisite to establishing severe emotional distress." *Honaker*, 256 F.3d at 496. The facts alleged in the amended complaint describing Stampley's conduct are sufficient to plausibly conclude Adams suffered severe distress and mental anguish.

Thus, at this stage of the litigation, the Court holds that the emotional-distress claim against Stampley is not preempted by the Illinois Human Rights Act. Stampley's motion to dismiss Count 10 is denied.

**IV. Misquotations and Misdescriptions**

As discussed earlier in the Opinion, there are several misquotations in Adams' response briefs. For example, Adams' response briefs say that *Thakkar*, 458 N.E.2d 985, contains the following quote: "The IHRA is a remedial statute and must be liberally construed to protect claimants' rights." Pl.'s Resp. to UIC's Mot. at 6; Pl.'s Resp. to Stampley's Mot. at 7. But the case does not contain that text. Similarly, the brief includes the parenthetical "(emphasis added)" after the assertion that "the Illinois Supreme Court held that when a statute imposes a duty on an *agency*, the *agency's failure* to act cannot prejudice the rights of a party who has complied with their own obligations," which is attributed to *Madigan*, 899 N.E.2d 227. Pl.'s Resp. to UIC's Mot. at 6 (emphasis in original); Pl.'s Resp. to Stampley's Mot. at 7 (emphasis in original). It is not clear whether quotation marks were omitted, or whether Adams was paraphrasing the court's holding. In any event, the purported quotation does not appear in the case, and the case itself does not support that assertion. This kind of totally made-up quotation might very well be hallucinated quotations from generative artificial intelligence. What's more, as discussed in further detail in Part III.B of the Opinion, the brief misrepresents the holdings of several other cases, well beyond just an aggressive reading of a holding. And the citations to the cases are riddled with errors, including incomplete case names and missing page citations.

Perhaps there are reasonable explanations for how these problems came to be. But because these issues appear throughout both response briefs, the Court requires Adams' counsel to file a detailed Statement of Explanation to explain how the four identified problems (the one non-existent quotation, and the citations to *Roxana Community School District*, *Madigan*, and *Castaneda* that do not support the cited propositions) came to be. The Statement is due by October 7, 2026.

## V. Conclusion

UIC's motion to dismiss, R. 73, is granted in its entirety. Stampley's motion to dismiss, R. 77, is granted as to the claims under the Illinois Human Rights Act, and denied as to the emotional-distress claim.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 24, 2026